DECIDED IN

# THE SUPREME COURT

OF

# OREGON.

Argued January 13, decided January 20, 1914.

## EASTMAN v. JENNINGS–McRAE LOGGING CO.

(138 Pac. 216.)

**Negligence—Actions—Complaint.**

1. Complaint for the destruction of timber by fire caused by the acts and omissions of defendant *held* to state a cause of action.

[As to the liability of private persons for fires, see note in 30 Am. St. Rep. 501.]

**Negligence—Actions—Issues and Proof.**

2. Where a complaint seeks recovery for the destruction of standing and growing timber only, by fire, evidence of the burning of dead and down timber is reversible error, under Section 67, L. O. L., requiring the complaint to contain a plain and concise statement of the facts constituting the cause of action, Section 725 requiring the evidence to correspond with the substance of the allegations, and to be relevant to the question in dispute, and Section 726 requiring each party to prove his own affirmative allegations that are denied by the other party, though Section 64 abolishes all forms of pleading in actions at law.

**Statutes—Subjects and Titles—Scope of Title.**

3. The title of Laws of 1911, page 475, "An act for the protection of the forests of the State of Oregon; to prevent and suppress forest fires," etc., includes the provisions of Section 13, relating to civil remedies, and is not violative of Article IV, Section 20, of the Constitution, providing that every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title.

**Constitutional Law—Damages—Equal Protection of Law—Due Process of Law—Double Damages.**

4. Laws of 1911, page 481, Section 13, providing for double damages for injuries from a fire caused by the malice, willfulness or negligence

69 Or.—1          (1)

of another, is not unconstitutional as denying equal protection of the law, nor as taking property without due process of law.

[As to equal protection of laws as a constitutional requirement, see note in 25 Am. St. Rep. 873.]

**Constitutional Law—Negligence—Due Process of Law—Damages.**

5. Laws of 1911, page 481, Section 13, authorizing the recovery, from one from whose land fire escapes accidentally or unavoidably, of actual damages, is invalid as a taking of property without due process of law, in violation of Amendments 5, 14, of the U. S. Constitution.

From Columbia: JAMES A. EAKIN, Judge.

Department 1.   Statement by MR. JUSTICE RAMSEY.

This is an action by L. B. Eastman against the Jennings-McRae Logging Company, a corporation, to recover damages for the destruction of timber by fire, alleged to have been caused by the negligence of the defendant. The plaintiff recovered in the court below a verdict for $1,400, and a judgment for $2,800 (double the amount of the verdict). The defendant appeals. The facts are stated in the opinion of the court.    ·   REVERSED AND REMANDED.

For appellant there was a brief over the names of *Messrs. A. E. & M. H. Clark, Mr. T. H. Ward* and *Messrs. Dillard & Day,* with an oral argument by *Mr. A. E. Clark.*

For respondent there was a brief over the names of *Mr. Claude M. Johns, Mr. Will R. King, Mr. Charles A. Johns* and *Messrs. King & Saxton,* with oral arguments by *Mr. Claude M. Johns* and *Mr. Will R. King.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

This is an action to recover damages for the destruction of timber by fire, alleged to have been caused by the willful and negligent acts and omissions of the defendant. The defendant is a corporation, and, when

the damages claimed are alleged to have occurred, it owned and possessed real property situated in section 23, township 7 north, range 5 west of the Willamette meridian, and was engaged in cutting from said premises for the purpose of sale sawlogs, and in so doing employed a large number of men. The plaintiff, at the same time, owned and possessed the south half of the northeast quarter and the east half of the southeast quarter of section 35 in township 7 north, range 5 west of the Willamette meridian.

The complaint alleges that, at all times mentioned in the complaint, there was *standing and growing timber* on the premises of the plaintiff, above described, consisting of, among other things, fir and cedar, and that *the cedar standing and growing* on said premises, as aforesaid, was of the probable and reasonable value of $3,000, and that *the fir standing and growing* on said premises, as aforesaid, was of the probable value of $1,500. The complaint alleges, also, that on or about August 30, 1911, and while so engaged in cutting logs, the defendant kindled and started a fire on its own premises above described, and did thereafter and on or about the same day willfully, carelessly and negligently suffer and permit the said fire to burn and smolder, and carelessly, willfully and negligently suffer and permit the said fire so started on its own premises to escape from its own lands to and upon the lands of the plaintiff, and did thereby willfully, carelessly and negligently burn and destroy any and all of *the standing cedar timber* upon the premises of the plaintiff to and of the value of $3,000, and did damage *the standing fir timber* upon the premises of the plaintiff to and of the value of $1,000, and by reason thereof the plaintiff has been and is now suffering actual damages of and to the sum of $4,000. The said complaint alleges, also, that the said fire, which

so burned and destroyed the property of the plaintiff, as aforesaid, was the result of the carelessness, willfulness and negligence of the defendant herein, and by reason thereof the said defendant is liable to the plaintiff for double damages therefor, said double damages amounting to $8,000. The complaint alleges, also, that the defendant on or about August 30, 1911, kindled and set a fire on its own said premises, and did willfully, carelessly and negligently suffer and permit the said fire to burn and spread, and did willfully, carelessly and negligently communicate the said fire to and upon the plaintiff's said lands, and did willfully, carelessly and negligently burn and destroy the plaintiff's said property, to the plaintiff's actual damage in the sum of $4,000, and by reason thereof the plaintiff is entitled to have and recover from the defendant double damages, amounting to $8,000, contrary to the form of the statute. The answer admits that the defendant is a corporation; that the plaintiff is the owner and possessed of said real property; that there was growing on the lands claimed by the plaintiff some fir and cedar timber; that the said cedar was worth not to exceed $100, and said fir was worth not exceeding $100; that the defendant was engaged in cutting and removing logs from its premises, and in so doing employed a considerable number of men, and that the defendant owned the real premises referred to in the complaint. The answer denied all other allegations of the complaint.

The jury found a general verdict for the plaintiff in the sum of $1,400. The jury found, also, *specially,* that said fire did not escape through the willfulness of the defendant, but that it did escape through the *negligence* of the defendant. The court below, when the trial began, required the plaintiff to elect whether he would proceed under the common law or under the

statute, and the plaintiff elected to proceed under the statute.

Before the trial began, but after the filing of the answer, the defendant presented a demurrer to the complaint alleging that the complaint does not state facts sufficient to constitute a cause of action under Chapter 278 of the Laws of 1911. The demurrer was overruled.

1. Without going into details, we will say that we think that the complaint states a cause of action under said statute.

2. L. B. Eastman was called as a witness in his own behalf, and various questions were asked him about the cedar on his land that was destroyed or injured by the fire. Counsel for the defendant objected to all testimony with reference to the value of timber that was down and severed from the land as irrelevant and immaterial. This objection was made to the evidence of this witness and to the evidence of other witnesses that testified in relation to the timber that was destroyed or injured by the fire. These objections were properly made, and the reasons for the objections were fully stated; but all objections made to proving that the plaintiff was damaged by burning and injuring timber that was dead and lying on the ground at the time it was burned and prior thereto were overruled by the court, and these rulings were duly excepted to.

The witness Eastman testified, *inter alia,* that the down cedar was better than that standing, and worth as much, and that about a million feet of cedar was burned. He testified, also, that most of it was down and dead, and that there was not enough of *live* timber to talk about, and that cedar was worth $2.40 per thousand feet. The evidence for the plaintiff shows that nearly all of the timber that was burned or injured by the fire was dead timber and lying on the

ground at the time that the fire reached it, and prior thereto. All such evidence was objected to, and the ʼtrial court overruled all such objections, and proper exceptions were taken, and these rulings present one of the main questions for consideration.

The complaint does not allege that any dead timber, or timber lying on the ground, was destroyed or injured. It does not mention any timber, excepting *standing* and *growing* timber. Paragraph III of the complaint alleges that at all the times of which the plaintiff complains, "there was standing and growing timber on the premises of the plaintiff * * consisting of * * fir and cedar," and paragraph V of the complaint alleges, *inter alia,* that the plaintiff "kindled and started a fire on its own premises," and did negligently "suffer and permit the said fire to burn and smolder, * * and did negligently suffer and permit the fire, so started on its own premises, to escape from its own lands to and upon the lands of the plaintiff, and did thereby * * negligently burn and destroy any and all of the *standing cedar timber* upon the premises of the plaintiff, * * and did damage to the *standing fir* upon the premises of the plaintiff," etc. For the damage caused by burning the *standing cedar* and the injury to the *standing fir,* the plaintiff alleges that he was damaged in the sum of $4,000. There is nothing in the complaint indicating that there was on the plaintiff's premises any dead cedar or fir, or any timber excepting *standing* and *growing* timber. There is no allegation that anything but standing and growing timber was damaged by the fire.

Section 64, L. O. L., abolished all *forms* of pleading in actions at law; but it did not abolish the *substance* of the pleadings. At common law, certain forms of pleading were held to be necessary, and certain fictions

in pleading were required. In 1862 our present statute, relating to pleadings, was adopted, but there have been a few amendments to our Civil Code in the last 50 years.

When the legislature abolished forms of pleading, it adopted Section 67, L. O. L., which provides, *inter alia,* that the complaint shall contain, "a plain and concise statement *of the facts constituting the cause of actions,* without unnecessary repetition." It is therefore necessary that the complaint state *the* facts constituting the plaintiff's cause of action. Nothing more is required to be stated, and nothing less will suffice. Our code is very liberal in permitting amendments of pleadings: Sections 100–102, L. O. L. The issues to be tried arise upon the complaint, the answer, and the reply.

Section 725, L. O. L., states the cardinal rule of evidence in the following words: "Evidence shall correspond with the substance of the material allegations, and be relevant to the questions in dispute." Each party shall prove his own affirmative allegations (Section 726, L. O. L.) that are denied by the other party. A plaintiff can recover only upon the allegations of his complaint. *The* facts constituting his cause of action must be stated in his complaint, and these allegations he must prove, if they are denied. If he fails to prove any material allegation of his complaint that has been put in issue by an answer, he must lose.

In *Union St. Ry. Co.* v. *First Nat. Bank,* 42 Or. 611 (72 Pac. 588), the rule is stated thus: "It has often been held by this court that the plaintiff must prevail, if at all, upon the matters alleged in his complaint, * * and that he cannot set up one cause of action or suit in the complaint, and recover upon another and different ground of relief alleged in a reply."

In *Boothe* v. *Farmers' Nat. Bank,* 47 Or. 302 (83 Pac. 786), the court says:

"The plaintiff is bound to recover, if at all, upon the cause of action alleged, and not upon some separate and distinct cause of action which may be disclosed by the evidence. * * And a finding of fact outside the issues made by the pleadings is a mere nullity, and will not sustain a judgment."

In *Male* v. *Schaut,* 41 Or. 429 (69 Pac. 138), the court says:

"The court found that Soper's appearance was without the knowledge or authority of such company. * * This, however, was a matter wholly outside the issues made by the pleadings. * * It is elementary law that a finding of fact by a court outside of the issues made by the pleading is a mere nullity, and will not sustain a judgment."

In *Newby* v. *Myers,* 44 Kan. 479 (24 Pac. 972), the court says:

"The evidence in a case must correspond with the allegations of the pleadings, and be confined to the point or points in issue. * * Again, findings of fact of a trial court must be upon the issues made in the pleadings. Findings of fact, which are not in issue made by the pleadings may be wholly disregarded and treated as immaterial."

If a party brings replevin to recover a *horse,* he cannot recover an *ox.* If he sues upon an account stated, he cannot recover on proof of a debt due on an open account, without amending his complaint. The evidence in a cause must correspond with the allegations of the pleadings, and be confined to the point or points at issue. In this case, the plaintiff sued for injuries to cedar and fir timber *standing* and *growing* upon his land, and the evidence tended to show that nearly all of the injury sustained by him

was done to dead timber lying on the ground. The trial court held that, under the issues made by the pleadings, the plaintiff could recover for the dead and down timber, although it was not standing or growing upon the plaintiff's land at the time that the fire reached his land. This was reversible error.

There is much doubt, on the evidence, whether the plaintiff has a right of action against the defendant, and hence this question should be determined by a jury trial in the ordinary way, and not by this court under Article VII of the Constitution. However, this court, when passing on the facts in an action at law, under said article of the Constitution, determines the case according to the issues made by the pleadings.

The contention of the respondent that the appellant waived the objections considered *supra* is not sustained. Counsel for the appellant insisted on said objections throughout the trial, in different forms.

3. The defendant contends that Section 13 of Chapter 278 of the Laws of 1911, upon which this action is based, is unconstitutional, because the title of the act, of which said section is a part, is insufficient to embrace the civil remedies provided by that section. The title of the act is, "An act for the protection of the forests of the State of Oregon; to prevent and suppress forest fires; to create a state board of forestry to serve without compensation, and a state forester and deputy and for the appointment of fire wardens, and to prescribe their rights, powers and duties, and to provide for the payment of their compensation and expenses and the expenses of the said board; providing penalties for the violation of the provisions of this act, making an appropriation therefor, repealing Sections 5508, 5509, 5510, 5511, 5512, 5513, 5514, 5515, 5516, 5517, 5518, 5519, 5520, 5521, of Lord's Oregon Laws (Chapter 131 of the Laws of Oregon for the

year 1907), and declaring an emergency.'' It is contended that said title does not include the provisions of said Section 13 relating to civil remedies in accordance with Article IV, Section 20 of the Constitution of this state, which is in the following words: ''Every act shall embrace but one subject, *and matters properly connected therewith,* which *subject* shall be expressed in the title'' to the act; ''but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title.'' The other things stated in the title of the act, including the provisions for penalties and the repeal of the sections referred to, are ''matters properly connected,'' with that subject. Everything in the act referred to was intended for the protection of the forests. Hence the protection of the forests is the subject of said act, within the meaning of Article IV, Section 20, of the Constitution, and that was the only thing that it was necessary to state in the title of said act. Everything provided by the various sections of said act is intended to aid in protecting the forests, and all the provisions of the act are matters properly connected with said subject. It is the *subject* of the act, and not ''the matters properly connected therewith,'' that shall be expressed in the title.

The Constitution of New York provides that ''no private or local bill which may be passed by the legislature shall embrace more than *one subject,* and that shall be expressed in its title.'' The legislature of that state passed an act, entitled ''An act in relation to certain local improvements in the city of New York.'' In the *Matter of the Petition of Ferdinand Mayer,* 50 N. Y., pages 505–507, it was contended that said act was unconstitutional, but the court, in that case, held otherwise, and, passing upon it, the court

says: "The Constitution does not require that the *title* of an act should be the most exact expression of the subject which could be invented. It is enough if it fairly and reasonably announces the *subject* of the act. * * A subject is that of which anything may be affirmed or predicated, and, if the various parts of this act have respect to or relate to local improvements, the act is not obnoxious to the constitutional objection interposed, and the degree of relationship if it legimately tends to the accomplishment of the general purpose, is not material."

The Constitution of Minnesota provides that "no law shall embrace more than one subject which shall be expressed in the title." The legislature of that state passed an act, entitled "An act to establish a probate code" (Laws 1889, c. 46), and it contained 21 chapters and 326 sections. In *Johnson* v. *Harrison,* 47 Minn. 576 (50 N. W. 924, 28 Am. St. Rep. 382), it was contended that said act was unconstitutional on the alleged ground that it embraced several distinct subjects, but the court held it to be valid, saying *inter alia:* "The term 'subject,' as used in the Constitution, is to be given *a broad and extended meaning, so as to allow the legislature full scope to include in one act all matters having a logical or natural connection.* * * All that is necessary is that the act should embrace some *one general subject;* and by this is meant merely that all matters treated should fall under some *one general idea,* be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject."

In his Constitutional Limitations (7 ed.), page 206, Judge COOLEY says: "It has accordingly been held that the title of 'an act to establish a police government for the city of Detroit' was not objectionable for its gen-

erality, and that all matters properly connected with the establishment and efficiency of such a government, including taxation for its support, and courts for the examination and trial of offenders, might constitutionally be included in the bill under this general title": See, also, on this point, *Corvallis & E. R. Co.* v. *Benson,* 61 Or. 369 (121 Pac. 418) ; *Bailey* v. *Benton County,* 61 Or. 390 (111 Pac. 376, 122 Pac. 755).

We conclude that Section 13 of Chapter 278 of the Laws of 1911 contains matters properly connected with the subject of the title of the act of which it is a part, and that it is not repugnant to Article IV, Section 20, of the Constitution.

4. The defendant contends, also, that that portion of Section 13 of Chapter 278, *supra,* providing for the recovery of double the amount of damages sustained by any person injured by fire, in violation of said chapter, when the fire occurred through the willfulness, malice or negligence of another, is unconstitutional, as denying the equal protection of the law, and as constituting a taking of property without due process of law. This portion of said section authorizes a recovery of double the amount of damages suffered when the injury occurs through the willfulness, malice or negligence of another person. A person that injures another by his willful, malicious or negligent acts or omissions is at fault for the injury, and this statute imposes upon him for this fault a liability for double the amount of the damages that the injured person sustains thereby. This is a statutory authorization of the recovery of vindictive damages for injuries within the purview of this act.

Missouri passed an act requiring all the railroads in that state to erect and maintain fences on the sides of their roads, and this act provided that if any road should fail to fence its track as required, it should be

liable in double the amount of damages thereby occasioned to animals, etc., and the Supreme Court of the United States held, in the case of the *Missouri R. Co.* v. *Humes,* 115 U. S. 512 (29 L. Ed. 463, 6 Sup. Ct. Rep. 110), that said act was constitutional. Justice FIELDS, delivering the opinion of the court says, *inter alia:*

"The statutes of nearly every state of the Union provide for the increase of damages when the injury complained of results from the neglect of duties imposed for the better security of life and property, and make the increase in many cases double, in some treble, and even quadruple, the actual damages. Experience favors this legislation as the most efficient mode of preventing, with the least inconvenience, the commission of the injuries. The decisions of the highest courts affirm the validity of such legislation."

See, also, on this point, *Atchison, T. & S. F. R. Co.* v. *Mathews,* 174 U. S. 96 (43 L. Ed. 909, 19 Sup. Ct. Rep. 609), holding a law allowing double damages to be valid.

Under Section 346, L. O. L., treble damages are allowed for injuries to timber in certain cases: See *Loewenberg* v. *Rosenthal,* 18 Or. 186 (22 Pac. 601).

We are satisfied that the provision of the statute under consideration permitting a recovery of double damages for injuries by fire, when the injuries are the result of willful, malicious or negligent acts of a defendant, are valid.

5. The appellant asserts, also, that the clause of said Section 13 of Chapter 278 of the Laws of 1911 is unconstitutional, which provides as follows: " * * But if such fires were caused or escaped *accidentally or unavoidably, civil action lies for only actual damages* as determined by the value of the property injured or destroyed, and the detriment to the land and vegeta-

tion thereof.'' This provision attempts to make the owner of land liable for damages to timber by fire which started on his land or escaped therefrom ''accidentally and unavoidably.'' If A owns a timber farm, and his neighbor B owns timber land adjoining A's land, and a tramp passes through A's land and sets fire to a straw stack, and this fire extends to B's timber and destroys it, under the terms of said Section 13, A is liable to B for the damage done to his timber by such fire, although A may never have heard of the fire until after the damage had been done, and was not guilty of any negligence or other fault in relation to said fire, or its escape from his premises. In other words, this provision attempts to make a farmer liable to his neighbor for damages by fire escaping from his premises to his neighbor's when he did not start, or have any agency in starting, the fire, and did not know of it until the damages were done. It attempts to make a person liable for an injury that was *''accidental or unavoidable.''* When an injury is the result of an *unavoidable* accident, no one is at fault for its occurrence.

The fifth amendment of the Constitution of the United States declares that no person shall be ''deprived of life, liberty or property without due process of law,'' and the fourteenth amendment of said Constitution provides that no state, ''shall deprive any person of life, liberty or property without due process of law.'' The principle asserted in these amendments was inherited from our English ancestors, and taken from the Great Charter of King John.

COOLEY, in his work on Constitutional Limitations (7 ed.), pages 506, 507, says:

''Due process of law in each particular case means such an exercise of the powers of government as the settled maxims of law permit and sanction, and under

such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs. * * *But there is no rule or principle known to our system under which private property can be taken from one person and transferred to another for the private use and benefit of such other person,* whether by general law or by special enactment.''

The author, in the same volume, on page 511, says:

''All vested rights are held subject to the laws for the enforcement of public duties and private contracts, and for the punishment of wrongs; and, if they become divested through the operation of these laws, it is only by way of enforcing the obligations of justice and good order.''

Liabilities growing out of contracts or for torts or crimes may be imposed or enforced. But one person's property cannot be taken and transferred to another private person, by process of law, unless for breach of some contract, express or implied, or for some tort or crime.

This provision, in effect, attempts to make a person who has been guilty of no wrong or negligence or fault liable to pay another for damages done to the latter's property. If this could be done, it would be a taking or deprivation of property of a person ''without due process of law.''

In *Birmingham M. R. Co.* v. *Parsons,* 100 Ala. 668 (13 South. 604, 46 Am. St. Rep. 92, 27 L. R. A. 263), the court says:

''Under the influence of these decisions [there cited], we are constrained to hold that the second section of said act, in that it imposes an absolute liability upon railroad companies, irrespective of compliance on their part with duties prescribed in its first section, and without any fault on their part, is in violation of constitutional rights.''

In *Denver Ry. Co.* v. *Outcalt,* 2 Colo. App. 403, 405 (31 Pac. 179), passing on the validity of a statute of that state, the court says:

"It [the statute] declares that the corporation shall be liable, and make payment for damages inflicted *by inevitable accident,* which no care, skill, diligence, or foresight could prevent, and precludes the corporation from exculpating itself or making any defense whatever. * * Here there is no violation of a law, or pretense to comply, by the corporation. I think that in almost every instance a statute making the liability absolute, and not a penalty for violation of a law, has been held unconstitutional."

In *New Orleans R. R. Co.* v. *Bourgeois,* 66 Miss. 6 (5 South. 630, 14 Am. St. Rep. 534), the court says:

"If a law were to declare them [railroads] so liable, without reference to whether there was negligence or fault on their part or not, it would be unconstitutional and void. * * They are responsible for injuries caused by their negligence or want of skill or care; but there is no reason, in law or morals, for holding them to a stricter measure of accountability for inevitable misfortunes than would be exacted from natural persons for injuries which resulted from unavoidable accident."

In *Jensen* v. *Union P. R. Co.,* 6 Utah, 253 (21 Pac. 994, 4 L. R. A. 724), the syllabus of the case states:

"Section 2349, Compiled Laws of 1888, providing that every railroad company shall be liable for all the livestock that it kills, regardless of any fault on the part of the railroad company, is void as taking property without due process of law under the fifth amendment to the Constitution of the United States."

In *Zeigler* v. *South & North Ala. R. R. Co.,* 58 Ala. 599, the court says:

"It [the statute] declares that the railroad corporation shall make reparation for an injury inflicted in

the authorized prosecution of its lawful business, without a semblance of fault, negligence, or want of skill in its employees, an injury which no human prudence or foresight could prevent, and yet the statute will not allow the railroad to exculpate itself, by proof of the highest qualifications and the most watchful viligance. This falls short of due process of law.''

We find that that portion of Section 13 of Laws of 1911, page 481, which provides that ''if such fires were caused or escaped accidentally or unavoidably, civil action shall lie only for the actual damages sustained as determined by the value of the property injured or destroyed, and the detriment to the land and vegetation thereof,'' is invalid as being repugnant to the fourteenth amendment to the Constitution of the United States, and that in order to recover damages under said section, in any case, it must be shown that the damages to the property of the plaintiff were the proximate result of willfulness, malice, or negligence on the part of the defendant. Said provision attempts to subject a person to liability for injuries to the property of another that occurred by *unavoidable accident,* and the effect of it would be, if it were valid, to take from one person property and transfer it to another, by judicial process, where the former has not violated any law or been guilty of any negligence or fault of any kind. Such a proceeding is not ''due process of law.''

We do not find it necessary to pass on any other questions in this case.

The judgment of the court below is reversed, and a new trial ordered.         REVERSED AND REMANDED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.