## STALEY v. STATE.

No. A-11830.   Dec. 16, 1953.

(264 P. 2d 387.)

Orval Grim, Sayre, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, J.   The plaintiff in error, Oscar Staley, defendant below, was charged in the district court of Beckham county, State of Oklahoma, with the crime of selling intoxicating liquor to a minor, Title 37, § 5, O.S. 1951, in said county on November 16, 1951, consisting of one pint of Sunnybrook whiskey to one Kelly Morton Goff, a minor of the age of 16 years.   The defendant was tried by a jury, convicted, his punishment fixed at a fine of $1,000 and 90 days in jail; judgment and sentence was entered accordingly, from which this appeal has been perfected.

The evidence herein as offered by the state discloses a group of young high school students went from the football stadium to the home of the defendant where a member of the party, one Kelly Goff, purchased a pint of Sunnybrook whiskey for which they paid the defendant $4 in money.   They thereafter proceeded to drive around drinking the liquor.   There were three boys, one of whom, Kelly Goff, was 16 years of age, and two girls in the party; one of the girls was 13 years of age.   The record discloses that the 13-year old girl became so intoxicated that she was drunk for 2½ days.   The record further shows that Kelly Goff had been to Oscar Staley's place on three or four other occasions with other parties and purchased liquor from him prior thereto.   At the time

of the trial he positively identified Oscar Staley as being the man who sold him the pint of whiskey. However prior thereto he had told Police Chief Tisdal that he had bought it from a Mr. Fitzgerald. He said he thought that was Staley's name. Goff's testimony was amply corroborated with reference to the purchase of the whiskey and the place from which it was bought by the other young people in the party. Their evidence established the place of purchase as Staley's home, but none of them saw the man who made the sale except Kelly.

The defendant did not testify in his own behalf. He offered instead the testimony of Odie Halley, Odell Williams from Oklahoma City, who testified that they together with Mr. Hulsey of Oklahoma City, who did not testify, and Mr. McKaplin, who lived northeast of Elk City, went to Garden City, Kansas, on the 13th day of November 1951, to hunt pheasants. They offered in evidence Kansas hunting licenses, including that of the defendant, issued November 13, 1951, and testified that they did not leave Kansas until the afternoon of the 16th and that they spent the night in the Deuce of Hearts tourist courts at Vici, Oklahoma. Mr. Moss, the operator of the Deuce of Hearts tourist courts, was called as a witness and produced a registration card dated November 16, 1951 showing that one O. S. Staley and Barney Hulsey were registered at his place on the night of the 16th, as he likewise produced another registration card showing that Roy McKaplin, Odie Halley, and Odell Williams spent the night there. Moss related he had a faint recollection of Staley, that was all. He testified he only knew Mr. Hulsey. He didn't record the auto license number or the make of the car. The forms Moss used were not printed but were made up on the typewriter by his wife. Mr. Hulsey, who lived in Oklahoma City, did not appear as a witness. Mr. Halley testified that his business was that of contracting and related that he had no office in Oklahoma City other than one that he maintained in his home. He testified that he had recently built a kind of drive-in and had "a contract to build a tourist court, a beer place and thing" in Oklahoma City. Mr. Odell Williams testified that he had no occupation; that he had been in the cafe and beer business at Davenport, Oklahoma; that his residence was 803 N. W. 23rd, Oklahoma City. He also stated that he had helped his brother farm some. Mr. McKaplin testified that he was a farmer; that he just recently bought the farm; that it was an estate and belonged to his folks. He related that he had no family; that he was a single man and that he visited with Oscar Staley from time to time. He related that he had not known the other men on the hunting party until November 13, 1951. It thus appears that there is a very sharp conflict in the testimony of the state and the alibi of the defendant.

In this case, as in all cases, finding of fact was a matter for the determination of the jury. It has been repeatedly held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Criminal Court of Appeals will not interfere with the verdict even if there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. Sadler v. State, 84 Okla. Cr. 97, 179 P. 2d 479. The jury believed the evidence of the state and elected not to believe the alibi of the defendant. The evidence offered by either if believed by the jury, would have been conclusive on the issue of fact.

First, the defendant complains that at the trial of the case he offered a demurrer to the information, and in his brief he complains that the court erred in overruling the same. He cites no authority in support of this proposition. The court has examined the same and it clearly states the cause of action relied upon for conviction, to wit, selling intoxicating liquor to a minor.

The next proposition urged by the defendant is that at the conclusion of the testimony and the court's instructions, the trial court erred in overruling the

plaintiff in error's motion for mistrial. This contention is predicated upon the proposition that in arguing the case to the jury, the county attorney stated, "They knew where to go and without hesitancy they went from the football stadium right down to this bootlegger's place', referring, of course, to where they purchased the whiskey. The defendant objected for the reason it was highly prejudicial. The trial court sustained the objection and admonished the jury not to consider the statement that the defendant is a bootlegger. Thereafter the county attorney remarked, "that boy went in there (referring to the defendant's home) and comes right back out with this pint of whiskey. Now what do you think he is?" The defendant's counsel objected to that line of argument for the reason it was highly prejudicial. The court said that, "there is no evidence in the record that he is a bootlegger. The jury had no right to speculate that his reputation had not been placed in issue and therefore it was not a proper matter for comment". Whereupon the county attorney stated, "I do not intend to go against the court's ruling. My position merely was that he did this one thing, that brands him as a bootlegger". In support of this contention the defendant cites Brower v. State, 26 Okla. Cr. 49, 221 P. 1050, to the effect that it is a grave breach of duty for a prosecuting attorney to seek by innuendo or artifice to procure a conviction by injecting into the case facts or conclusions not based upon the evidence adduced at the trial. Also Pebworth v. State, 88 Okla. Cr. 97, 199 P. 2d 621, holding that where argument of counsel is outside the evidence and intended to influence the jury argument should be checked upon the objection made. Also Edwards v. State, 85 Okla. Cr. 125, 186 P. 2d 333, to the effect that the character of the defendant cannot be impeached unless the defendant puts his character in issue by introducing evidence of good character. None of the foregoing cases are in point with the situation herein confronting us. Nevertheless, we point out that in many cases it would not be proper for the county attorney to refer to the defendant as a bootlegger. But such is not the situation confronting us in the case at bar. Here the record discloses that Goff and other young people had made three or four purchases prior to the one herein involved. Hence, the evidence in this case supports the conclusion that the defendant was a bootlegger. Even the cases hereinbefore relied upon by the defendant recognize the proposition that the county attorney has a right to make an agument based on the evidence in the case. The state's evidence in the case established the fact that the defendant was a bootlegger, hence, the county attorney had the right to make such argument. This point has been squarely passed upon by the Texas Court of Criminal Appeals in Hammond v. State, 1927, 138 Tex. Cr. R. 641, 137 S.W. 2d 1025, holding that reference to the defendant as a "wise bootlegger" under the circumstances in evidence was not an erroneous argument. It defined a bootlegger as follows:

"The term 'bootlegger' denotes one who engages in the illegal sale or handling of intoxicating liquor in territory where its sale is prohibited, and is not restricted to one who peddles liquor."

In Garrett v. State, 75 Ga. App. 577, 44 S.E. 2d 153, the Georgia court cited Hammond v. State, supra, defining a bootlegger, and further said:

"In his argument to the jury, the solicitor referred to the defendant as a bootlegger. The defendant moved the court to direct the solicitor to refrain from referring to the defendant as a bootlegger, which the court refused to do. * * * The inference drawn by the solicitor that the defendant was a bootlegger was properly sustained by the evidence, and the court did not err in not expressing his disapproval of the argument of the solicitor in referring to the accused as a bootlegger."

We wish to make it clear that where the evidence does not clearly establish that the defendant was a bootlegger, such a reference would constitute error. It is well to again note, in the case at bar, that the fact that Kelly Goff had

purchased liquor three or four times previous to the occasion in question was brought out by defendant's counsel on cross-examination. Goff further testified on cross-examination that he had been with friends when they had bought whiskey from the defendant before. The trial court was in error under the evidence herein in excluding the statement from the jury that the defendant was a bootlegger. The trial court was in error in holding it was an attack on his reputation; it was a comment on the evidence.

A further objection was made to another alleged statement of the county attorney, which does not appear to be a part of the record and therefore is not available for our consideration.

The third proposition offered by the defendant is to the effect that the trial court erred in giving instruction No. 3 concerning the defense of alibi. The defendant relies upon the case of Stuart v. State, 35 Okla. Cr. 103, 249 P. 159, 162. The portion of the instruction of which he expressly complains is, "if after a careful consideration of all the evidence in the case, the jury entertain a reasonable doubt as to whether the defendant was in such other place when the crime was committed, then and in that event the jury should give the defendant the benefit of the doubt and acquit him". In the Stuart case this court condemned the foregoing language contained in instruction No. 3, and stated the instruction should have been predicated upon the proposition that, "if after a careful consideration of all of the evidence in the case the jury entertain a reasonable doubt as to whether the defendant was present at the time and place where the crime was committed, if it was committed, then and in that event the jury should give the defendant the benefit of the doubt and acquit him." But in Stout v. State, 41 Okla. Cr. 42, 270 P. 90, and in Sanders v. State, 46 Okla. Cr. 298, 287 P. 842, it was held that the instruction therein complained of was not prejudicially erroneous, due to other conditions impelling affirmance.

In view of the overall nature of the evidence, and the strong conflict therein we cannot say without grave doubt that instruction No. 3 did not tip the scales against the defendant. The instruction went to the very foundation of the defense and shifted the burden to the defendant thereby prejudicing him in a substantial right. The burden of proof is never on the defendant. It rests squarely on the state to show his guilt beyond a reasonable doubt. In Davis v. State, 17 Okla. Cr. 604, 191 P. 1044, 1048, wherein a similar instruction was involved, it was said:

"The defense was largely in the nature of an alibi, as shown by the testimony of several witnesses, including the defendant. The correct rule is that if the evidence of an alibi produces upon the minds of the jury a reasonable doubt of the defendant's presence at the time and place where the alleged crime was committed, it would be sufficient to require an acquittal, and the court should have so instructed the jury. The instruction given shifts the burden of proof, and was therefore prejudicial to the substantial rights of the defendant."

For the failure to properly instruct, this case is therefore reversed and remanded, with directions to re-try the defendant under proper instructions (see Stuart v. State, supra, for proper instructions).

POWELL, P. J., and JONES, J., concur.